UNITED STATES *v.* JOS. RIEDEL GLASS WORKS, INC. (No. 4486).[1]

---

[1] C. A. D. 307.

United States Court of Customs and Patent Appeals, March 28, 1945

*Paul P. Rao*, Assistant Attorney General (*Sybil Phillips* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.
*Lamb & Lerch* (*John G. Lerch* and *Kenneth G. Osborn* of counsel) *amici curiae.*

[Oral argument February 8, 1945, by Mr. Weeks, Mr. Schwartz, and Mr. Lerch]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court overruling the action of the Collector of Customs at the port of New York in assessing a duty of 75 per centum ad valorem on certain bottles imported from Czechoslovakia, and sustaining appellee's protest to the effect that the imported merchandise was properly dutiable at the rate of 25 per centum ad valorem.

The only controversy in the case is whether the machine which produced the bottles was an automatic machine or whether the bottles were otherwise produced as provided in paragraph 218 (e) of the Tariff Act of 1930, which, so far as pertinent, reads:

PAR. 218. (e) Bottles and jars, wholly or in chief value of glass, of the character used or designed to be used as containers of perfume, talcum powder, toilet water, or other toilet preparations; * * * *produced by automatic machine, 25 per centum ad valorem; otherwise produced, 75 per centum ad valorem.* * * * [Italics ours.]

Appellant concedes that so far as the imported merchandise is concerned, the actual forming of the molten glass into bottles was an automatic process, but contends that the bottles were not produced by automatic machine because the services of a gatherer were required in feeding the molten glass into the machine.

Appellant contends further that the legislative history of paragraph 218 (e), *supra*, was not only applied erroneously by the trial court, but also that such history establishes the intent of Congress to restrict the lower rate of duty to bottles produced by a method in which no human agency was involved.

The process employed in the manufacture of the imported bottles discloses that a workman standing beside a machine "in front of a glass oven, takes an iron rod, and dips it into a small hole in the oven, in which there are several tanks of molten glass. By twisting the rod

on the surface of the glass in the tank he accumulates a certain amount of glass. * * *. He clips this piece of molten glass from the rod and drops it into a mold, and the mold closes automatically, * * *. A motor drives the machine, and a mechanical device, operating all the time, shoots air into the mold and blows the bottle, opens the mold, and throws the bottle out."

A machine such as that described, in the opinion of appellant's chief witness, would be called a "hand machine" because it requires the service of a skilled gatherer in its operation. The distinctior which this witness made between an automatic machine and a hand machine is that in the hand machine the molten glass is gathered by a skilled laborer and in the automatic machine it is automatically fed into the machine.

A method by which bottles are otherwise produced is disclosed by the record, and pointed out in the brief of appellant as follows:

In addition to the machine described as a hand machine, there is also a process known as "hand made" in the manufacture of bottles. In the hand-made process, the glass bottle blower gathers the glass on a hollow iron pipe. It is then molded by hand on a marble, placed in a mold which is closed by an attendant, and then blown by the workman. After the bottle is inflated, the workman draws his pipe away and blows a thin fragment of glass on the top in order to break away from the mold. Then the bottle is taken out of the mold and weighed. It is reheated at the neck in order that the finishing impression may be made on the neck to develop the ring in the bottle. After that it is annealed in the same manner as bottles produced by automatic or hand machines.

The services of a *glass bottle blower* are not required in connection with the so-called "hand machine" process by which appellee's merchandise was produced. It is a fair deduction from the record in this case that the art of the glass blower has been largely transferred to the automatic machine for the purpose of providing mass production; and that the individual glass blower exercises his skill in the production of "hand-made" bottles.

Appellant urges that the trial court was not authorized to have recourse to the legislative history of the statute in interpreting the meaning of the language of paragraph 218 (e), *supra*, as applied to the imported merchandise. It appears to us that the term produced by "automatic machine" is ambiguous, and that the court below was authorized to use the legislative history of the statute to determine the intent of Congress. In this connection, the doctrine enunciated in the case of *United States* v. *American Trucking Associations, Inc., et al.*, 310 U. S. 534, 542, is applicable to the following effect:

In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose

of the draftsmen of a statute, particularly in a law drawn to meet many needs of a major occupation.

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination."

Reverting to the words by which Congress undertook to give expression to its wishes as to merchandise such as that in the case at bar, we find the following definition in Webster's New International Dictionary, Second Edition, 1936:

*automatic machine.* A machine or machine tool which, after once being set, operates automatically *except for applying the power, lubrication, supplying material, and shutting off the power.* [Italics ours.]

As argued by appellee, it is clear from the record that the machine which produced the bottles in this case operated automatically, after once being set, except for supplying the raw material—molten glass. Such a machine falls squarely within the dictionary definition of "automatic machine" given above, despite the fact that the raw material is fed by hand. Once the raw material is placed into the machine, all other operations are automatic, and the next thing that emerges is a completed bottle.

Appellant contends that that definition of the dictionary is not applicable to automatic machines which produce bottles because an automatic machine which manufactures bottles is one in which both the power and the material are supplied automatically.

Assuming without holding, that the term "automatic machine" is susceptible of proof of commercial designation, the evidence introduced by appellant failed to establish that in the trade and commerce of the United States the term "automatic machine" had a meaning which differed from the common meaning, and that the meaning in the trade was uniform, general, and definite throughout the United States. In other words, appellant failed to prove commercial designation.

The legislative history of paragraph 218 (e), *supra,* was thoroughly considered and reported in the opinion of the presiding judge in the court below. *Jos. Riedel Glass Works, Inc.* v. *United States,* C. D. 849. Therefore, it would serve no useful purpose to here repeat citations and references to the same effect. Suffice to say, that aside from the question of revenue, the intent of Congress as demonstrated

by the legislative history of the statute was to protect American glass blowers against the competition of lower-paid glass blowers of other nations by providing a duty of 75 per centum ad valorem for all bottles produced otherwise than by automatic machine.

For the reasons stated, the judgment of the customs court is *affirmed.*